UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN HONDA FINANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF REVERE,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:19-cv-10266-ADB<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff American Honda Finance Corporation ("Honda"), initiated this action against the City of Revere ("Revere") alleging that Revere's policy of allowing towing companies to auction vehicle without notice to all interested parties deprived Honda of its Due Process rights under the Constitution. [ECF No. 1 ("Compl.")]. Currently before the Court is Honda's motion for partial summary judgment on Counts I, II, and III of the complaint. [ECF No. 20-1 at 14]. Count I asserts that Revere's towing policy violated Honda's constitutional rights under the Fourth and Fourteenth Amendments; Count II alleges the same actions violated the Massachusetts Constitution, Article 10; and Count III requests declaratory relief under 28 U.S.C. § 2201 to the effect that Revere's towing policy is unconstitutional. [Compl. ¶¶ 30–54]. The Court is also presented with a cross motion for summary judgment from Revere. [ECF No. 21-1]. For the reasons set forth below, Honda's motion, [ECF No. 20], is GRANTED and Revere's cross motion, [ECF No. 21-1], is DENIED.

1

**I.     BACKGROUND**

    **A.     Factual Background**

Honda regularly provides financing for the purchase of Honda-manufactured vehicles and other automobiles. [Compl. ¶ 6]. On November 2, 2016, Honda obtained a money security interest and lien on a 2016 Honda Civic registered to Shanasia Hackworth ("Hackworth") and titled in New York State ("the Vehicle"). [Id. ¶¶ 14–15]. On or about December 30, 2016, the Revere Police Department obtained possession of the Vehicle as part of an ongoing criminal investigation involving stolen property and the misuse of credit cards. [Id. ¶ 16; ECF No. 21 at 1].

To conduct its investigation, the Revere Police Department enlisted the help of Mario's Towing, a third-party service, to tow the Vehicle to police headquarters. [ECF No. 21 at 1]. After the police completed their investigation, Revere authorized Mario's Towing to detain and dispose of the Vehicle according to Massachusetts General Laws ch. 255, § 39A ("the Statute"). [Compl. ¶ 20]. Pursuant to the Statute, the Revere Police Department provided Mario's Towing with information about Hackworth, the Vehicle's registered owner. [ECF No. 21 at 2]. Mario's Towing contacted Hackworth to give her the opportunity to claim the Vehicle and pay the accrued charges for towing and storage, but she did not claim the Vehicle. [Id.]. Following the procedure outlined in the Statute, Mario's Towing waited the required number of days, mailed an additional notice to Hackworth at her known address, and then put the Vehicle up for sale at auction. [Id.]. The Statute did not require Revere or Mario's Towing to contact Honda, the lienholder, despite Honda's interest in the Vehicle. See generally Mass. Gen. Laws ch. 255, § 39A.

Mario's Towing advertised the vehicle for sale on May 18, 2017, and finally sold it on July 30, 2017 for $15,000.  [ECF No. 20-2 ¶ 19; ECF No. 20-5].  According to the National Automobile Dealers Association Guide, on May 18, 2017 the high auction value of the Vehicle was $16,092, which means Honda could have received that amount had it been allowed to sell the Vehicle itself rather than Revere putting it up for auction and receiving a lower amount.  [ECF No. 20-2 ¶ 21; ECF No. 20-3 ¶ 6].

Following the sale, Honda's perfected lien was not recorded with the Vehicle's new title through the Massachusetts Department of Transportation.  [Compl. ¶¶ 23–24].  As a result, the sale and retitling of the Vehicle effectively extinguished Honda's property interest and ensured that Honda would not recoup any proceeds from the sale of the vehicle.  [Id. ¶ 24].  According to the Statute, Mario's Towing was authorized to use the proceeds from the sale to compensate itself for any unpaid towing and storage charges.  [ECF No. 20-2 ¶ 15; ECF No. 21-3].  Further, Mario's Towing had to pay Revere a $30 administration fee for the privilege of towing vehicles under its contract with the city.  [ECF No. 20-2 ¶ 15].

At no point during the process was Honda, as a lienholder, notified of the Vehicle's status or given the opportunity to intervene in the proceedings with the Revere Police Department or Mario's Towing.  [Compl. ¶¶ 25, 28–29].  The parties agree that Revere, the Revere Police Department, and Mario's Towing did not violate the Statute.  [ECF No. 20-2 ¶¶ 12-14].  Instead, Honda argues that the Statute is unconstitutional under both the U.S. and Massachusetts constitutions because it fails to give notice or a hearing to lienholders of unclaimed vehicles detained by the Revere Police Department, thereby depriving lienholders of Due Process.  [Compl. ¶¶ 10, 28–29].

### B.    Procedural Background

On February 12, 2019, Honda filed a complaint against Revere in United States District Court for the District of Massachusetts. [Compl.]. Honda filed a motion for partial summary judgment on January 31, 2020. [ECF No. 20]. Revere opposed Honda's motion and filed a cross motion for summary judgment on February 21, 2020. [ECF No. 21-1].

## II.   LEGAL STANDARD

Honda seeks summary judgment on the first three of four Counts alleged in the complaint. [ECF No. 20-1 at 14]. Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández

v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the nonmoving party must set forth specific, material facts showing that there is a genuine disagreement as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396–97 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III. DISCUSSION

#### A. Revere Is a Proper Defendant

Honda relies on 18 U.S.C. § 1983 as a basis for its Due Process claim. [ECF No. 20-1 at 16]. At the outset, Revere, asserting that it is an improper defendant for Honda's challenge to the Statute's constitutionality, asks the Court to grant its cross motion for summary judgment

because Honda has improperly implicated the city in this action, and should instead direct its claims at Mario's Towing.  [ECF No. 21 at 2]; see also [ECF No. 7 at 6 ("[D]amages were caused by third parties who were not under direction or control of the city.")].  The Court finds that Honda has properly brought a section 1983 claim against Revere.[1]

A municipality may be held liable under section 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citation and internal quotation marks omitted).  To prevail on a section 1983 claim against a municipality, a plaintiff must show that a specific government policy or custom directly caused a violation of the plaintiff's constitutional rights.  Miller v. City of Boston, 586 F. Supp. 2d 5, 7–8 (D. Mass. 2008) (citing Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978)).  Official municipal policy includes "practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Monell, 436 U.S. at 691).

Honda claims that Revere's policy of not notifying lien holders, consistent with the statute, is "standard practice[]" toward all security interest and lien holders of seized vehicles, which in this particular instance violated Honda's constitutional rights.  [Compl. ¶¶ 11–12].  "[A]

---

[1] The First Circuit has identified three ways that a private entity, such as Mario's Towing, could be treated as a state actor for the purpose of a section 1983 claim.  See Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).  First, the private actor may "assume[] a traditional public function when performing the challenged conduct."  Id.  Second, the state may coerce or significantly encourage the private actor to perform the challenged conduct.  Id.  Finally, the state may be a "joint participant" with the private actor.  Id.

In Nesbitt v. City of Methuen, the plaintiff failed to assert any of these rationales to establish the owner of a towing company as a state actor in a section 1983 action.  No. 17-cv-11255, 2018 WL 3130636, at *2 (D. Mass Jun. 26, 2018).  The failed claims against the towing company owner, however, did not prevent the plaintiff from also suing the City of Methuen and the Methuen Police Department under section 1983.  Id.

municipality is liable [under section 1983] only 'when execution of a government's policy or custom . . . inflicts the injury.'" Wilson v. City of Boston, 421 F.3d 45, 59 (1st Cir. 2005) (quoting Monell, 436 U.S. at 694); see also Bennett v. City of Biddeford, 364 F. Supp. 2d 1, 2 (D. Me. 2005) ("Plaintiff's claim under section 1983 will only be successful if he establishes that the City was responsible for an unconstitutional policy or custom." (citing Monell, 436 U.S. at 690–91)). In this case, Revere concedes that the towing procedure outlined by the Statute and executed by the Revere Police Department is "Revere's regular custom, policy and practice for release of vehicles initially detained by Revere's police." [ECF No. 20-2 ¶ 9]. Therefore, it is clear that its application of the Statute is municipal policy in Revere. [Id. at ¶¶ 2, 9]. As a result, Honda has brought a valid section 1983 claim against Revere.

**B.     Revere's Policy Violates Honda's Procedural Due Process Rights**

Neither Honda nor Revere contests that the Statute directs the police to enlist towing garages to store vehicles, and then allows those garages to sell the vehicles as a means to cover the cost of storage. [Compl. ¶¶ 17–20; ECF No. 21 at 1–2]. Honda claims that the Statute violates Due Process under the Fourteenth Amendment because the law authorizes a towing garage to sell an unclaimed vehicle without providing adequate notice and a hearing to every owner of a property interest in that vehicle. [Compl. ¶¶ 28–29]. In essence, Honda argues that the statute is unconstitutional because when Revere, as allowed by the Statute, permits garages to sell these vehicles to reimburse unpaid towing charges, Revere is destroying the collateral that secures Honda's perfected lien without Due Process. [Id. ¶¶ 24, 34].

The Statute provides that any motor vehicle that is removed from the scene of an accident may be placed in the care of a towing company and garage. Mass. Gen. Laws ch. 255, § 39A.

When the vehicle is placed within the care of the towing company, the officer must provide the name and address of the registered owner of the vehicle. Id.

> Upon receipt of such information the owner of the garage shall notify the registered owner of the motor vehicle by registered mail, return receipt requested, that such motor vehicle has been placed in his care as provided by this section, and shall inform him of the storage rates thereof, and shall inquire if he is to continue to hold the motor vehicle subject to such storage rates. . . . If, after the expiration of sixty days from the date when the vehicle was brought to the garage or placed in the care of the owner of said garage, the owner of the motor vehicle has not claimed said vehicle, the owner of the garage may give notice to the owner by registered mail at his last known place of abode stating the amount of storage charges and informing him that if the vehicle is not claimed within twenty-one days the vehicle will be sold.

Id. The Statute further provides that "[u]pon such sale the owner of the garage may deduct therefrom his charges for storage and the costs of sending notices and of holding the sale." Id.

Revere does not reimburse the garages for any uncompensated losses, so by the time the vehicle is sold, the sale proceeds are the only source of compensation and reimbursement available to garage owners. See Mass. Gen. Laws ch. 255, § 39A. As a result, the garages treat the profits from the sales under the Statute as reimbursement for their towing jobs.

Because the Statute was originally enacted to promote public safety in the wake of traffic accidents, Commonwealth v. Mamacos, 568 N.E.2d 1139, 1142 (Mass. 1991), Massachusetts state courts have found that the Statute applies narrowly to cases concerning either public safety or a public officer acting in the public interest, see Ford Motor Credit Co. v. Doe, No. 200600239, 2006 WL 1075586, at *3 (Mass. Super. Ct. Mar. 27, 2006) (finding that the Statute did not apply to a private debt collection case). The Statute applies to the claim brought by Honda because the Vehicle was seized by the Revere Police Department acting within their duties as public officers and in the course of a criminal investigation. [Compl. ¶ 16]. Accordingly, Honda does not claim that the Statute has been misapplied, but rather that the substance of the Statute itself is unconstitutional. [Compl. ¶ 10].

Due Process claims invoke a two-step analysis. Messere v. Dennehy, No. 06–11158, 2007 WL 2609371, at *5 (D. Mass. Aug. 30, 2007). First, the plaintiff must have a protected property interest recognized by state law. Id. Second, the plaintiff must demonstrate that the defendant deprived them of that property interest without constitutionally adequate process. Id; see Mathews v. Eldridge, 424 U.S. 319, 321 (1976) (providing the three-part test used to determine whether a process was adequate for Due Process purposes); Garcia-Rubiera v. Fortuno, 665 F.3d 261, 270 (1st Cir. 2011) ("To establish a procedural due process claim under § 1983, plaintiffs must demonstrate that they have a property interest as defined by state law and that the defendants deprived them of this property interest without constitutionality adequate process." (internal quotation marks omitted)).

Honda's perfected lien gives it an enforceable property interest in the Vehicle, thereby easily satisfying the first element. See Lopes v. Fafama Auto Sales, No. 10–70008, 2011 WL 6258818, at *3 (Mass. App. Ct. Dec. 8, 2011). As to the second element—a deprivation without adequate process—to the Court's knowledge, the constitutionality of the Statute has never come before any court within the First Circuit, either at the federal or state level. See Harper v. Booth, 382 F.Supp.3d 124, 129 (D. Mass. 2019) ("The First Circuit Court of Appeals has not addressed potential Due Process violations in the car-towing context . . . .").[2] Rather, most cases citing the Statute concern towing garages seeking to recover costs for storage, or, owners seeking to

---

[2] In a case involving another statute connected with towing cars, the Massachusetts Appeals Court upheld the constitutionality of a statute that allowed the City of Boston to tow a legally parked car that had several outstanding unpaid parking tickets. Bane v. City of Boston, 396 N.E.2d 155, 156 (Mass. App. Ct. 1979). The court held that because the vehicle's owner was promptly notified by mail that his car had been towed and the reason for the towing, his Due Process rights under the Fourteenth Amendment were not violated. Id. at 158. This is distinct from the instant case where Honda, which has an interest in the vehicle, was not notified—promptly or otherwise.

reclaim their vehicles and money paid to a towing garage.  See, e.g., Central Towing Co. v. City of Boston, 357 N.E.2d 310, 311 (Mass. 1976); Baillargeon v. Kazanjians Garage Inc., No. 07–10062, 2008 WL 466579, at *1 (Mass. App. Ct. Nov. 30, 2007); Ford Motor Credit Co. v. Falcon Towing & Recovery Corp., No. 200701446A, 2007 WL 2705858, at *1 (Mass. Super. Ct. Aug. 20, 2007).

### 1. Honda Had a Valid Property Interest in the Vehicle

An auto company with a perfected lien takes priority over a lien or financial interest on the part of the towing company.  See Doe, 2006 WL 1075586, at *3.  Further, state courts have held that lienholders generally have enforceable property interests in the vehicles serving as collateral for their liens.  See Lopes, 2011 WL 6258818, at *3 (finding an auto sales company as the sole lienholder had an enforceable security interest in a vehicle); see also NES Rentals v. Maine Drilling & Blasting, Inc., 992 N.E.2d 291, 295 (Mass. 2013) (stating generally that perfected liens are an encumbrance to the owner's property which affect both the owner "or anyone possessing an interest . . . ." (citation omitted)); Universal Ins. Co. v. Dept. of Justice, 866 F. Supp. 2d 49, 76 (D.P.R. 2012) (finding an insurance company, as a lienholder, had a property interest in a vehicle seized by the government).  Therefore, a perfected lien clearly gives Honda a vested property interest in the Vehicle.

### 2. Revere's Policy Fails to Provide Adequate Notice to Parties with a Property Interest in a Towed Vehicle

Having determined that Honda had a valid property interest in the Vehicle, the Court must next consider whether the Statute provides sufficient process.  "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."  Mathews, 424 U.S. at 348 (alterations in original) (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 171–72 (1951)).  Therefore, the

Due Process Clause requires that the government provide notice and a hearing to a party before depriving that party of a property interest. See id. At a minimum, "the government [must] provide some notice and some opportunity to be heard prior to final deprivation of a property interest." Propert v. District of Columbia, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (emphasis omitted) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982) (discussing the government's duty to property owners)). If the government does not provide property owners with any sort of notice or provide a hearing prior to seizing property, that is a per se violation of the interested party's Due Process rights. See Fuentes v. Shevin, 407 U.S. 67, 96 (1972) (noting that while forms of Due Process may vary, replevin statutes denying any sort of hearing to chattel owners violated the Fourteenth Amendment); Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 315 (1950) (clarifying that Due Process affords the right to meaningful or "actual" notice); see, e.g., HVT, Inc. v. Port Auth. of N.Y. & N.J., 15-cv-005867, 2018 WL 3134414, at *10 (E.D.N.Y. Feb. 15, 2018) (finding that plaintiff automotive leasing company was deprived of its Due Process rights by policy that allowed defendant to seize and detain a vehicle without a hearing).[3]

In determining whether Revere's policy provides constitutionally adequate process to protect Honda's interest in the Vehicle, the Court considers the factors identified by the Supreme Court in Mathews. 424 U.S. at 335; see Draper v. Coombs, 792 F.2d 915, 923 (9th Cir. 1986)

---

[3] In HVT, Inc. v. Port Auth. of N.Y. & N.J., the court noted in dicta that if the statute were amended to include "notice . . . sent to titled owners, registered owners and record lienholders of the seized vehicles," in addition to a "prompt post-deprivation hearing," that would satisfy the necessary elements of Due Process. 2018 WL 3134414, at *11.

11

(finding Mathews is the proper test to determine whether the timing of a post-tow hearing is unconstitutional).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

With regard to the private interest at issue, while courts have acknowledged that the owner of a seized vehicle is most negatively affected by its loss, lienholders and similarly interested parties have an equally valid interest in protecting their stake in the property. Compare Propert, 948 F.2d at 1333 (finding that the city's policy to promptly dispose of unclaimed vehicles deemed "junk" without a "hearing procedure of any kind" was an egregious violation of a vehicle owner's Due Process rights); with Ford Motor Credit Co. v. N.Y.C. Police Dept., 503 F.3d 186, 194 (2d Cir. 2007) (noting that as a lienholder, "Ford Motor Credit's interest in the present value of a seized vehicle, while not as great as the interest of the vehicle's owner" was still entitled to "the income stream derived from ownership of property.") (citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 54, (1993))). As a result, the Court finds that the first factor of the Mathews test favors Honda. See 424 U.S. at 334–35.

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation under Revere's current policy. See 424 U.S. at 344 (providing as an affirmative example, a policy that would require additional medical assessments to ensure that an individual is legitimately physically or mentally impaired prior to receiving disabled worker benefits). If it is unlikely that property would ultimately be sold without notice to all interested parties, courts will tend to uphold policies that provide a substantial benefit to the government. See Draper, 792

F.2d at 923 (finding that a policy that provided post-seizure hearings to vehicle owners forty-eight hours after towing had a substantial benefit to the city that outweighed the temporary inconvenience to the property owners (citing Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1325 (9th Cir. 1982))).

If a policy allows a sale without adequate notice to interested parties, however, the permanent deprivation of an owner's property interest outweighs any benefits of the existing procedures. Henry v. City of Middletown, 655 Fed. App'x 451, 463 (6th Cir. 2016) (holding that the second factor favored the property owners because they "had no opportunity to be heard before being permanently deprived of their vehicles" and that the "risk of an erroneous deprivation was thus high"). In Draper, the Ninth Circuit found that an Oregon statute followed by the City of Portland when towing cars was unconstitutional because it did not provide an opportunity for a hearing, before or after towing. 792 F.2d at 923. Even in Henry, where the challenged statute provided notice to vehicle owners and lienholders, the Sixth Circuit found that without the additional safeguard of a post-impoundment hearing the level of due process was inadequate. 655 Fed. App'x at 455, 463. Thus, similar to Draper and Henry, the Statute here raises concerns under the second factor because the law risks permanently depriving property owners or those with an interest in the property of their interest without any Due Process.

Finally, under the third Mathews factor, the Court must balance any legitimate interests that Revere may have for enforcing the Statute, such as public safety, against the burden that would be placed on Revere if it were required to provide additional procedural safeguards. See, e.g., Krimstock v. Kelly, 306 F.3d 40, 45 (2d Cir. 2002) (noting that a policy that delayed forfeiture proceedings until criminal proceedings involving the vehicle owner concluded was permissible); Propert, 948 F.2d at 1335 (acknowledging that D.C. had a genuine interest in

keeping "junk" vehicles off the streets). "Nevertheless, however weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero—that is, the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest." Propert, 948 F.2d at 1332 (emphasis in original).

In this case, Honda argues that, no matter Revere's legitimate interest in towing vehicles for public safety reasons, Revere's policy, worse than providing insufficient notice, provides no notice at all, thereby wholly depriving Honda of the ability or opportunity to protect its property interest. [Compl. ¶¶ 28–29]. The parties do not contest that Revere's policy is to provide notice only to "the registered owner of the motor vehicle," Mass. Gen. Laws ch. 255 § 39A; [ECF No. 21 at 2], and yet the law is settled that all parties with a valid property interest are entitled to notice and a hearing, see Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) ("[A]ctual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . ."); see also Ford Motor Credit Co. v. N.Y.C. Police Dept., 394 F. Supp. 2d 600, 612 (S.D.N.Y. 2005), aff'd, 503 F.3d 186 ("The extinguishment of Ford Credit's liens without any meaningful procedural accommodations amounts to a violation of Ford Credit's due process rights."). Therefore, as a lienholder, Honda should have received adequate notice and had the opportunity for a hearing before the Vehicle was put up for sale. See Ford Motor, 394 F. Supp. 2d at 610. As Honda's opportunity for due process was in essence "reduced to zero," any interest Revere had in favor of the policy is moot. See Propert, 948 F.2d at 1332. Because Revere's policy falls short of the minimum standard of Due Process guaranteed by the Fourteenth Amendment, the Statute as written and as applied is unconstitutional.

Although the First Circuit has not weighed in on this issue, the conclusion of the Court is supported by cases in other circuits that have found similar statutes unconstitutional insofar as they failed to give notice to all parties with valid property interests in a vehicle. See Henry, 655 Fed. App'x at 464; Ford Motor, 503 F.3d at 190; Propert, 948 F.2d at 1332; Draper, 792 F.2d at 923.

For example, in Henry, the Sixth Circuit held that a city violated vehicle-owners' Due Process rights by following a statute that failed to provide a post-impoundment hearing before selling their vehicles. Henry, 655 Fed. App'x at 464. The statute allowed the city to dispose of vehicles after their owners were arrested if the vehicles were not claimed within ten days of a mail-order notice. Id. Notably, the Ohio statute at issue in Henry required that notice be given to both the "owner or lienholder" of vehicles seized by the police. Id. at 455. Despite providing pre-sale notice, the city—in following the statute—did not provide any post-impoundment hearing. Id. at 464. The court found that it was indisputable that the owners had established a valid property interest in the vehicles, and thus focused on whether the owners had received adequate process. See id. at 463. The court reaffirmed settled law that, while the adequacy of process may vary depending on the balance of several factors, the "process required can never be reduced to zero." Id. at 463 (quoting Propert, 948 F.2d at 1332).

In Ford, the Second Circuit examined a Due Process claim by an auto company that challenged the city's policy of not allowing secured creditors to participate in the forfeiture process for vehicles seized in connection with criminal investigations. 503 F.3d at 188. Like the Sixth Circuit, the Second Circuit found that "a security interest is indisputably a property interest protected by the Fourteenth Amendment." Id. at 191. The court found that, by seizing the vehicle subject to a lien held by Ford, the city had deprived Ford of the value of the collateral

15

that backed its security interest and thereby violated its Due Process rights. Id. at 191–92; see also Armstrong v. United States, 364 U.S. 40, 48 (1960) ("Before the liens were destroyed, the lienholders admittedly had compensable property. Immediately afterwards, they had none."). Further, the court found that, while the New York statute required that "interested part[ies]" get notice and the opportunity to participate in a hearing, Ford had been improperly excluded from the process despite being the holder of a "cognizable property interest." Ford Motor 503 F.3d at 194–95. Thus, as an owner of a valid property interest in the vehicle, Ford was entitled to notice and full participation in the forfeiture hearing process. Id. at 195; see also Port Auth., 2018 WL 3134414, at *9 ("The principle that a hearing must occur before a deprivation becomes final has been applied uniformly in other cases involving the towing and impoundment of vehicles.").

Finally, in Propert, the D.C. Circuit found that the district's policy of disposing of abandoned "junk" vehicles as scrap violated the rights of owners and lien holders of registered vehicles that were identified as "junk" because there was insufficient notice and no opportunity for a hearing before or after the cars were towed. 948 F.2d at 1335–36; see also Ford Motor, 394 F. Supp. 2d at 612 (explaining that even if Ford had been sufficiently compensated by the city for the loss of their property interest in a seized and sold vehicle, as a lienholder they were still "sufficiently interested in the outcome of the proceedings to be entitled to notice and an opportunity to be heard").

After considering all of the Mathews factors, the Court finds that Honda was not provided with adequate Due Process under the Fourteenth Amendment because Revere's policy

does not provide lienholders with any form of notice or an opportunity to be heard prior to the sale of an unclaimed vehicle.[4]

### C.      Honda's Remaining Claims under Counts II and III

"[T]he federal and Massachusetts standards for a procedural due process analysis are identical." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 215 n.1 (D. Mass. 2005) (citing Liab. Investigative Fund Effort, Inc. v. Mass. Med. Prof. Ins. Ass'n, 636 N.E.2d 1317, 1322 (Mass. 1994) ("[W]e have treated the procedural due process protections of the Massachusetts and United States Constitutions identically.")). Therefore, as to Count II, because the Court has found Revere's policy provides insufficient procedural Due Process to protect Honda's interest, the policy also provides insufficient Due Process under Massachusetts state law. See Christensen, 360 F. Supp. 2d at 215.

Finally, as to Count III, having determined that the State provides insufficient Due Process protections to Honda, the Court grants Honda's request for declaratory relief to the effect that the Statute is unconstitutional. See [Compl. ¶ 51].

## IV.   CONCLUSION

Accordingly, Honda's motion for partial summary judgment, [ECF No. 20], is GRANTED, and Revere's cross-motion, [ECF No. 21-1], is DENIED. As the parties do not contest that the value of the Vehicle upon the date of advertisement was $16,092, [ECF No. 20-2 ¶ 21], and that Honda would have likely received this amount had it been allowed to sell the car itself, the Court will grant damages in that amount. [Compl. ¶ 50]; see generally [ECF No. 21].

---

[4] Because the Court finds that the Statute is unconstitutional on Fourteenth Amendment grounds, it need not consider whether it is likewise unconstitutional under the Fourth Amendment. [Compl. ¶ 33].

**SO ORDERED.**

July 8, 2020 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE